UNITED STATES DISTRICT COURT

CENTRAL DISTRICT FOR THE STATE OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE CO., <br> Plaintiff, <br> vs. <br> THE MILTON H. GREENE ARCHIVES, INC.; THE SONI LAW FIRM; VNU BUSINESS MEDIA, INC. <br> Defendants, <br> _____ | CASE NO.: CV 10-1090 DSF (JEMx) <br> FINDINGS OF FACT AND CONCLUSIONS OF LAW RE THE PRIORITY OF THE SONI LAW FIRM'S CLAIM TO THE DISPUTED FUNDS RELATIVE TO SCOTTSDALE INSURANCE CO.'S AND VNU BUSINESS MEDIA, INC.'S CLAIMS |

Scottsdale Insurance Co. filed this action in the nature of interpleader on February 12, 2010. The Court granted the parties' stipulation to bifurcate the action and adjudicate the priority of the Soni Law Firm's claim to the disputed funds relative to Scottsdale's and VNU Business Media, Inc.'s claims first. The parties also agreed that this matter could be decided on the papers submitted and stipulated facts.

Having reviewed the stipulated facts and papers submitted, the Court makes the following findings of fact and conclusions of law.

# I. FINDINGS OF FACT

1. On April 29, 2004, the Milton H. Greene Archives, Inc. filed a copyright infringement action against BPI Communications Inc. ("BPI Action").

2. The Soni Law Firm represented the Archives in the BPI Action.

3. VNU Business Media, Inc. is the successor to BPI.

4. On May 30, 2005, Joshua Greene signed a written retainer agreement with the Soni Law Firm on behalf of the Archives, which provided that the Archives would pay Soni an hourly fee for legal services rendered after that date.

5. On October 27, 2005, the Archives filed a copyright infringement action against Julien's Auction House, LLC and Barclay-Butera, LLC ("Julien's Action").

6. Soni represented the Archives in the Julien's Action.

7. The Archives sought approximately $2.9 million against the defendants in the Julien's Action.

8. Scottsdale had issued an insurance policy that required it to pay Julien's and Barclay-Butera's legal expenses in the Julien's Action, and to indemnify them from any damage awards.

9. Pursuant to this policy, Scottsdale paid for both Julien's and Barclay-Butera's legal expenses in the Julien's Action.

10. On March 8, 2006, District Judge Alicemarie H. Stotler found that VNU was the "prevailing party" in the BPI Action, and ordered the Archives to pay VNU $765,695.37 in attorney's fees.

11. In her March 8, 2006 order, Judge Stotler referred to the Archives's claims in the BPI Action as "frivolous," its filing of a Rule 11 motion as "abusive," its ex parte practice as "needless," and its summary judgment motions as "meritless."[1]

12. On January 18, 2007, VNU filed a Notice of Judgment Lien in the Julien's Action.

13. On February 26, 2007, the jury in the Julien's Action awarded the Archives $34,875.97 in damages against Julien's, but did not award the Archives any damages against Barclay-Butera.

14. On December 20, 2007, District Judge A. Howard Matz found that Barclay-Butera was a "prevailing party" in the Julien's Action, and ordered the Archives to pay Barclay-Butera $202,287.76 in attorney's fees.

15. In his December 20, 2007 order awarding Barclay-Butera attorney's fees, Judge Matz noted that "Plaintiff ha[d] taken a number of frivolous positions and repeatedly asserted arguments previously rejected"; a lawyer with Soni

---

[1] The Court overrules Soni's objections to these findings. (See Docket Nos. 160-61.) Contrary to Soni's contention, it is clear that Judge Stotler made these findings in her March 8, 2006 order. In addition, Soni's objections under Rules 401 and 403 of the Federal Rules of Evidence are overruled. The Court must analyze the equities between the parties' competing claims, and Judge Stotler's findings are highly probative on that subject.

expressed concern that there was "no evidentiary basis" for the Archives's claims against Barclay-Butera; the Archives's willful infringement argument against Barclay-Butera "was close to frivolous"; there was evidence of "improper motivation" on the part of the Archives during settlement negotiations; and the Archives's estimate for damages was "based on palpably contrived, implausible and unfounded speculation." The Order makes clear that Judge Matz, in addition to criticizing counsel's strategy and trial performance, also found counsel's record-keeping and invoices were "to put it charitably, rather dubious." Judge Matz detailed charges to the wrong client file, charges for numerous days in excess of 12 hours, and otherwise clearly excessive billing, as well as excessive hourly rates.[2]

16. On December 20, 2007, Judge Matz also found that the Archives was the "prevailing party" over Julien's, and ordered Julien's to pay the Archives $338,493.97 in attorney's fees. This was $413,714.86 less than the amount requested.

17. In his December 20, 2007 order awarding the Archives attorney's fees, Judge Matz incorporated the findings from his order awarding Barclay-Butera attorney's fees. He also found that the Archives and Soni "displayed flagrant greed in their trial conduct and strategy" and "engaged in conduct that caused [the Julien's Action] to be blown out of proportion." In addition, Judge Matz noted that Soni "displayed embarrassing sloppiness on several occasions" and repeatedly "mis-cited the law relating to 'reckless disregard' . . . despite the Court's rulings and admonitions . . . ." Finally, Judge Matz found that Soni's hourly billing rates were "unreasonable" and that "[i]n certain respects, [Soni's] record-keeping and

---

[2] The court overrules Soni's objections under Rules 401 and 403 to Judge Matz's findings regarding Soni's and the Archives's litigation conduct in the Julien's Action. The Court must balance the equities, and Judge Matz's findings are highly probative.

[its] invoices submitted to the Court were, to put it charitably, rather dubious."

18. On July 9, 2009, the Ninth Circuit denied the Archives's appeal of the judgment in the Julien's Action.

19. Pursuant to Scottsdale's insurance policy with Julien's, Scottsdale must pay the Archives the attorney's fee award Archives obtained in the Julien's Action.

20. On February 12, 2010, Scottsdale filed this interpleader action; named the Archives, Soni, and VNU as defendants; and deposited $400,896.45 with the clerk of the court.

21. Soni is representing both itself and the Archives in this action.

22. On February 1, 2011, Soni filed a complaint against the Archives for breach of contract and open book accounting in the Superior Court of California, County of Los Angeles.

23. On February 17, 2011, the Archives signed a stipulation for entry of judgment against it in the action filed by Soni. Soni apparently had separate counsel in that action.

24. On February 22, 2011, a final judgment in Soni's action against the Archives was entered in the amount of $1,413,018.63.

25. The Archives still has not paid Soni for any of the legal services rendered in the BPI or Julien's Actions.

26. The Archives currently does not have the money to pay the amounts it admits owing Soni for its legal services rendered, or the attorney's fees awards against it in the <u>BPI</u> and <u>Julien's</u> Actions.

## II. CONCLUSIONS OF LAW

1. Because this action was brought under 28 U.S.C. § 1335, the Court applies California substantive law to determine whether Soni's claim to the disputed funds has priority over Scottsdale's and VNU's claims. <u>See</u> <u>Equitable Life Assurance Soc'y of the United States v. McKay</u>, 837 F.2d 904, 905 (9th Cir. 1988).

### A. Scottsdale's Right of Equitable Offset

2. "[E]quitable offset is a means by which a debtor may satisfy in whole or in part a judgment or claim held against him out of a judgment or claim which he has subsequently acquired against his judgment creditor. The right exists independently of statute and rests upon the inherent power of the court to do justice to the parties before it." <u>Salaman v. Bolt</u>, 74 Cal. App. 3d 907, 918 (1977). "[I]n the ordinary setoff circumstances, 'a setoff procedure simply eliminates a superfluous exchange of money between the parties,' and 'may operate to preclude an unfair distribution of loss if one of the parties is totally insolvent or is unable to pay a portion of the judgment against him.'" <u>Birman v. Loeb</u>, 64 Cal. App. 4th 502, 519 (1998) (quoting <u>Jess v. Herrmann</u>, 26 Cal. 3d 131, 137 (1979)). In fact, "[t]he insolvency of the party against whom the relief is sought affords sufficient ground for invoking this equitable principle." <u>Harrison v. Adams</u>, 20 Cal. 2d 646, 648 (1942). Moreover, "[t]he fact that the demand of the plaintiff has not been reduced to judgment is no obstacle to its allowance as set-off against a judgment."

Id. at 649. "[U]nless the judgment creditor establishes the existence of facts supporting some equitable principle precluding it, offset is a matter of right, at least where the judgment creditor is insolvent." Margott v. Gem Props., Inc., 34 Cal. App. 3d 849, 854 (1973) (internal citation omitted).

3. Subrogation "is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A., 143 Cal. App. 4th 1098, 1105 (2006) (internal quotation marks omitted). "In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for a loss that the insurer has both insured and paid." Id. at 1106. When an insurance company pays a claim against its insured, "the insurance company is subrogated to the rights of its insured against any wrongdoer who is liable to the insured for the insured's damages." Id. "Subrogation has its source in equity and arises by operation of law." Id. (internal quotation marks omitted).

4. Applying these principles, Scottsdale has a right of equitable offset because: (1) it must pay the judgment and attorney's fee award entered against Julien's in the Julien's Action to the Archives; (2) the Archives must pay the attorney's fee award it owes Barclay-Butera in the Julien's Action to Scottsdale under the doctrine of subrogation; (3) the Archives is insolvent as shown by its inability to pay the fees it owes Soni or the attorney's fee awards it owes Scottsdale and VNU; and (4) the Archives has not asserted any facts that would support precluding this right.

**B. Scottsdale's Right of Equitable Offset has Priority over Soni's Claim**

5. Courts determine the priority between a right of equitable offset and an

attorney's contractual lien by balancing the competing equities.  See Brienza v. Tepper, 35 Cal. App. 4th 1839, 1848 (1995).  "[T]he general rule is that . . . an attorney's lien is subordinate to the rights of the adverse party to offset judgments in the same action or in actions based upon the same transaction . . . ."  Id. at 1849 (internal quotation marks omitted).  Other relevant factors include whether giving an attorney's lien priority would totally defeat the equitable offset, and also whether the attorney's lien was based on a hourly or contingent fee contract.  See Pou Chen Corp. v. MTS Prods., 183 Cal. App. 4th 188, 193-94 (2010).  Moreover, in assessing priority, "courts are not powerless to deal with" the situation where there is "a danger of collusion between the attorney and the client to defraud creditors."  Cetenko v. United Cal. Bank, 30 Cal. 3d 528, 535 (1982).

6. Even if Soni has a valid attorney's contractual lien over the attorney's fee award entered in the Archives's favor in the Julien's Action,[3] Scottsdale's equitable offset would have priority over it for four reasons.  First, the general rule applies because the claims Scottsdale and the Archives have against one another arise from the same action.  Second, if Soni's purported lien had priority over Scottsdale's right of equitable offset, it would completely defeat the offset.  Third, the public policy rationale for giving an attorney's contractual lien priority is weaker when the lien derives from an hourly fee arrangement.  Fourth, it appears likely that Soni and the Archives have colluded in an attempt to defraud the Archives's creditors.  Soni has worked under its hourly fee arrangement with the Archives for nearly six years, but still has never been paid by the Archives.  Soni represents both itself and the Archives in this action.  In doing so, it has advocated a position that would result in Soni receiving all of the disputed funds, and

---

[3] In California, a client may grant his attorney a lien on the proceeds from a prospective judgment with either an express contract or a retainer agreement that implies the attorney will look to the judgment for payment of his fee. Cetenko, 30 Cal. 3d at 531.  The lien is created and takes effect when the fee agreement is executed.  Id. at 533-34.

Scottsdale and VNU not being able to collect on their claims against the Archives due to its insolvent status. Soni's and the Archives's lack of good faith in litigating the BPI and Julien's Actions, as noted by District Judges Stotler and Matz, exacerbates the concern that Soni and the Archives have colluded to defraud the Archives's creditors. Moreover, it is difficult to imagine why the Archives - especially if represented by truly independent counsel - would stipulate to a $1,413,000 judgment in favor of Soni. The Archives had in hand a ruling from a United States district judge excoriating Soni for its conduct in the action, and for its billing practices. Under these circumstances, no reasonable client would stipulate that it owed its attorney such a significant sum in the absence of collusion.[4]

### C. VNU's Claim to the Disputed Funds has Priority over Soni's Claim

7. "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia." Cal. Civ. Code § 2897. Thus, before according priority among liens based on their time of creation, a court must first "determine whether the equities of the lienholders are equal." Bluxome St. Assocs. v. Fireman's Fund Ins. Co., 206 Cal. App. 3d 1149, 1159 (1988). In determining the equities between an attorney's contractual lien and a judgment creditor's lien, courts may consider whether giving priority to the attorney's lien will enable the judgment debtor to

---

[4] The Court recognizes that the Archives also incurred attorney's fees for Soni's unsuccessful representation with regard to the claims against Barclay-Butera. But Judge Matz awarded fees to the Archives for Soni's work that related to both defendants. The total amount pertaining to Barclay-Butera alone could not possibly raise the Archives's debt to more than four times the amount awarded by Judge Matz. (Barclay-Butera's attorneys received only slightly more than $200,000 for their services.) In the absence of an explanation for the stipulation to such an extraordinary amount, the Court finds that there was very likely to have been collusion.

avoid a judgment lien. See Oldham v. Cal. Capital Fund, Inc., 109 Cal. App. 4th 421, 435-36 (2003). In addition, courts may consider whether the hourly charge was excessive or if the hours were misrepresented. See Cetenko, 30 Cal. 3d at 532. Finally, as noted above, "courts are not powerless to deal with" the situation where there is "a danger of collusion between the attorney and the client to defraud creditors." Id. at 535.

8. VNU has a judgment lien over the attorney award the Archives obtained in the Julien's Action. See Cal. Civ. Pro. § 708.410.

9. Even if Soni has a valid attorney's contractual lien over the attorney's fee award entered in the Archives's favor in the Julien's Action, VNU's lien would have priority over it because all is not equal between these competing claims for three reasons. First, if Soni's purported lien had priority, VNU would not be able to collect on its judgment against the Archives due to its insolvent status. Second, Soni's hourly charge was found to be exceedingly excessive in the Julien's action, and Soni engaged in "frivolous," "needless," and "meritless" litigation tactics in both the BPI and Julien's Actions. Finally, the danger of collusion between Soni and the Archives strongly supports the conclusion that the equities are not equal between VNU and Soni's claim on the disputed funds.

## III. CONCLUSION

For these reasons, the Court concludes that both Scottsdale's and VNU's claims have priority over Soni's claim to the disputed funds.

5/23/11          *Dale S. Fischer*

Dated: _____

Dale S. Fischer
United States District Judge